THE PEOPLE OF THE STATE OF NEW YORK ex rel. CHRISTIAN CLAUSEN, Appellant, *v.* JOSEPH MURRAY and Others, Commissioners of Excise of the City of New York, Constituting the Board of Excise of said City, Respondents.

*Excise Law — saloon within* 200 *feet of a school house — entrance on another street — effect upon its exclusive occupation as a school house, that it is occupied in part by the teachers of a brotherhood — Laws* 1892, *chap.* 401, § 43; 1893, *chap.* 480, § 11.

The fact that the entrance to a saloon, although within the prohibited distance, is not on the same street with a school house does not take the saloon out of the operation of the statute which forbids the granting of a license for a saloon to a building on the same street with and within 200 feet of a building occupied exclusively as a school house.

The fact that seven persons, not teachers in the school, live in the school building and pay their board, being teachers by profession and members of a Christian Brotherhood, who own the building and conduct the school, pursuing their studies in the school building and paying for their subsistence money which goes to the support of the school, the residence and maintenance of these teachers being an essential principle in the system of economy by which the school is supported and administered, does not change the character of the occupation of the building in such wise that it is not occupied exclusively as a school house.

APPEAL by the relator, Christian Clausen, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 7th day of March, 1896, dismissing a writ of certiorari theretofore granted in the action.

*Samuel Untermyer*, for the appellant.

*Julius M. Mayer*, for the respondents.

Present — Barrett, Rumsey, Williams, Patterson and Ingraham, JJ.

Order affirmed with costs, on opinion of Pryor, J., in the court below.

The opinion of Pryor, J., was as follows :

Pryor, J. :

Upon the return to a writ of certiorari to review the action of the excise board in refusing a liquor license to the relator the facts are not in dispute, and the controversy involves only the construction of this provision of the statute, namely, "No person * * * shall * * * be licensed to sell strong or spirituous liquors, * * * in any building * * * which shall be on the same street or avenue and within 200 feet of a building occupied exclusively as a * * * school house" the distance to be ascertained by measuring from the center of the nearest entrance of such building to the center of the nearest entrance of the place for which the license is solicited. (§ 43 of chap. 401 of the Laws of 1892, as amended by chap. 480 of the Laws of 1893.)

In view of its obvious policy in protecting the school against the evil influences of the saloon, the statute should be so expounded as to accomplish its benign intent, and to that end be accorded a literal or a liberal interpretation as may most effectually avert the apprehended mischief. (*People ex rel. Cairns* v. *Murray*, 148 N. Y. 171, 173 ; *People ex rel. Gentilesco* v. *Excise Board*, 7 Misc. Rep. 415, 417.)

The prohibition is explicit and imperative that no license is allowable for a saloon on the same street and within 200 feet of a school house. In this instance the school house and the saloon are on Fifty-eighth street, and are separated by less than the requisite distance. The case, then, is within the terms of the enactment. But the relator insists that, as the entrance to the saloon is on Sixth avenue, the actual predicament is not within the policy of the law.

Were the court authorized upon pretense of construction to nullify a plain and peremptory provision of the statute by imputing to the Legislature a meaning contradictory to its language, still I do not perceive that the situation is exempt from the evil against which the enactment is a studious safeguard. The school house and

the saloon are on the same street, and the entrance to the latter, though on another street, is still within the prohibited proximity. That entrance may be out of view, but access to the saloon is not the less easy and inviting, and I cannot say that the scenes of vice and disorder of which it may be the provocation will not be of disturbance and detriment to the inmates of the school house.

But the presence of a saloon in proximity to a building is prohibited only when the building is "occupied exclusively as a * * * school house," and the relator contends that the house in question is not so occupied.

What is the exclusive occupancy intended by the statute? Obviously an occupancy for a different and independent purpose; for a purpose having no relation to the use of the building as a school house. If the additional use of the building be incidental only, and no way inconsistent with its primary and paramount use as a school house; if the additional use be under the control of the school authorities, and instrumental to the end of imparting instruction; if it be so trivial and insignificant as not to detract from the pervading character of the building as a resort for learning, then, surely, such use does not abolish the exclusive occupancy intended by the statute.

The fact which the relator affirms, that it forfeits this exclusive occupancy, is, that seven persons, not teachers in the school, live in the building and pay their board; but these persons are teachers by profession and members of the Brotherhood by which the building is owned and the school conducted. They prosecute their studies in the building; they pay for their subsistence only, and the money goes to the support of the school; the fund so paid is the wages of teaching, and is expended in the interest of teaching; and, finally, the residence and maintenance of these teachers in the building is an essential principle in the system of economy by which the school is supported and administered. To what other use, than to promote the interests of education, can it be said, with reason, that the building is appropriated?

"A school or a college building may have in it rooms or apartments for the use of the students and teachers, and it would still be occupied exclusively as a school house within the meaning of the statute. Such use of rooms or parts of the building is incidental to

the process of education, and is just as clearly within the policy of the law as if the entire structure was used exclusively for school rooms." (*People ex rel. Cairns* v. *Murray*, 148 N. Y. 175, 176.)

Indisputably, under the administrative system of Christian Brotherhood, the boarding in its buildings of members who teach in other schools is an incident of its process of education.

I conclude, therefore, that the occupancy by the seven persons of the building in question leaves it still essentially nothing but a school house.

Writ discharged and proceedings dismissed.