(Supreme Court, Special Term, Kings County. July 21, 1896.)

INTOXICATING LIQUORS—LICENSE OF PREMISES NEAR DWELLINGS.

Laws 1896, c. 112, § 17, subd. 8, which dispenses with the necessity of obtaining the consent of owners of buildings occupied as residences, in order that the liquor tax certificate may be issued for premises within 200 feet of such residences, where "traffic in liquor is actually carried on in said premises, so described, when the act takes effect," does not apply to premises in which liquor was sold under a license at the time the act of 1896 took effect, but which were abandoned before the application was made for the tax certificate.

Application by Charles Ritchie for the revocation of the liquor tax certificate issued to Adolph Samuely. Granted.

Backus & Manne (H. Manne, of counsel), for petitioner.
John M. Wald, for deputy commissioner of excise.
J. S. Fisher, for respondent.

OSBORNE, J. The petitioner herein shows, and it is admitted, that at the time of the passage of chapter 112 of the Laws of 1896, on March 23, 1896, known as the "Liquor Tax Law," one Philip Basler conducted the liquor business at No. 108 Union avenue, under a license issued to him by the board of excise of the city of Brooklyn; that on or about April 10, 1896, said Basler gave up the liquor business, moved away from said premises, and the same remained vacant during the months of April, May, and up to June 16, 1896; that on the last-named day one Adolph Samuely, the above-named respondent, made application to Special Deputy Michell for a liquor tax certificate to carry on the liquor business on said premises, and the same was issued to him on June 23, 1896. The petitioner here seeks to have said certificate revoked and canceled on the ground that there were buildings occupied exclusively as dwellings within 200 feet of said premises, and that said applicant had not obtained the consent of two-thirds of the owners of such buildings, as provided by section 17, subd. 8, of the liquor tax law. The language of said subdivision 8 of section 17 as to issuing liquor tax certificates to permit the traffic in liquors within 200 feet of a building or buildings occupied exclusively for a dwelling or dwellings is substantially the same as in the excise law of 1892 (chapter 440, § 43, Laws 1892, as amended by chapter 480, Laws 1893). In

the law of 1896 it is provided that consent of two-thirds of the owners of dwelling houses within 200 feet of the place where the traffic in liquor is to be carried on shall first be obtained, "except that such consent shall not be required in cases where such traffic in liquor is actually lawfully carried on in said premises so described in said statement when this act takes effect." The prohibition in the law of 1892 forbade the granting of a license to sell liquor in any building within 200 feet of a church or schoolhouse, "and for which a license does not exist at the time of the passage of this act." This section of the excise law has been construed by the court of appeals in People ex rel. Cairns v. Murray, 148 N. Y. 171, 42 N. E. 584; and that court held that "when the licensee, who was then established when the law took effect, abandoned the business, the prohibition became absolute as to all new applicants." I think that the reasoning by which the court of appeals arrived at its conclusion in the Cairns Case is equally applicable in construing subdivision 8 of section 17 of the liquor tax law. The object sought to be attained was to prevent the carrying on of the liquor business within 200 feet of buildings occupied exclusively as dwellings, without the consent of two-thirds of the owners thereof; and, while the purpose of the legislature was to protect parties established in business within the prescribed limit at the time the act took effect, such protection was only intended for those parties who were then actually established in business within the prescribed limits. When those parties abandoned such business location, no right or franchise remained in the premises themselves, but the prohibition became absolute as to any new applicants, in the absence of the statutory consent. To hold otherwise would have an effect different from what the legislature plainly intended.

The prayer of the petitioner must be granted.