(18 Misc. Rep. 653.)

In re ZINZOW.

(Supreme Court, Special Term, Albany County. December, 1896.)

1. INTOXICATING LIQUORS—ELIGIBILITY FOR LICENSE—PLACE.
Closing the entrance to a saloon in a building within 200 feet of a church, and making another in the next street, does not take the saloon out of the operation of Laws 1896, c. 112 (Liquor Tax Law) § 24, which provides that the traffic in liquor shall not be permitted in any "building" on the same street, and within 200 feet of a building occupied as a church.

2. SAME—PERSONS.
A person entitled to carry on a liquor business within 200 feet of a church by reason of having an established business within that distance at the time of the passage of the excise law of 1892 (Laws 1892, c. 401, § 43), loses such right

by leasing the premises to another for saloon purposes, and therefore cannot, after the expiration of the lease, apply for a license under Laws 1896, c. 112, § 24, prohibiting the traffic in liquors in any building within 200 feet of a church, unless such traffic was actually lawfully carried on when the act took effect.

3. SAME—CHURCH BUILDING.

A building, the main floor of which is occupied exclusively as a church, though other religious and charitable organizations occasionally meet in the basement, is a church, within Laws 1896, c. 112 (Liquor Tax Law) § 24, providing that the traffic in liquor shall not be permitted in any building on the same street, and within 200 feet of a building "occupied exclusively as a church."

Petition by Frederick Zinzow to revoke a liquor tax certificate, issued to Peter Schmidt. Ordered accordingly.

James H. Coyle (J. F. Montignani, of counsel), for petitioner.
John Gutmann, for defendant.
Nussbaum & Coughlin, for county treasurer.

CHESTER, J.　The petitioner, who is a citizen of the state and a trustee of the church hereinafter mentioned, seeks to procure the revocation of a liquor tax certificate issued to the defendant Peter Schmidt by the county treasurer of Albany county to traffic in liquors at 56 Elizabeth street, in the city of Albany, upon the ground that material statements in the application for such certificate are false, and that the defendant is not entitled to hold the certificate. The applicant stated in his application that the location of the premises where he proposed to carry on business was at 56 Elizabeth street, Albany; that the traffic in liquors was actually lawfully carried on in said premises at the time of the passage of the liquor tax law; that he could lawfully carry on such traffic on such premises under subdivision 1 of section 11 of said act; and that he was not within any of the prohibitions of the act. The petitioner insists that all these statements are false.

The controversy arises principally over three questions: First, whether the premises were 56 Elizabeth street or 64 Alexander street; second, whether or not the traffic in liquor was lawfully carried on in the premises in question at the time of the passage of the liquor tax law; and, third, whether or not the Deutsche Lutherische St. Trinitatis Kirche, known as the German Trinity Church, on Alexander street, is a building occupied exclusively as a church or a schoolhouse.

1. The saloon occupied by the defendant is situated on the southeast corner of Alexander and Elizabeth streets, and the entrance thereto, whether on Alexander street, as formerly, or on Elizabeth street, as now, is within 200 feet of all entrances to the church in question. Alexander street runs east and west, and Elizabeth street north and south. The church is on the south side of Alexander street, on the same side of the street as the Schmidt premises, and about 78 feet to the east thereof. The entrance to the saloon, prior to the taking effect of the liquor tax law, which was on the 23d day of March, 1896, had been on Alexander street, and the street number was 64 Alexander street.

There had, however, been an entrance on Elizabeth street to the basement, the floor below the part of the building used as a saloon, which had been known for some years as 56 Elizabeth street, and which entrance was some 30 or 40 feet from Alexander street. There had been no entrance directly to the room used as a saloon from Elizabeth street up to that time. On the next day, March 24th, a new doorway was cut from Elizabeth street into the saloon, about three or four feet from the corner of Alexander street, and the door leading directly to the saloon on the latter street was nailed up. The new extrance was numbered 56 Elizabeth street. There still remained, after these changes were made, an entrance by way of a hall door on Alexander street through a hallway, and an interior hall door to the saloon. I do not regard these changes in the entrance, or the question as to whether the building was 56 Elizabeth street or 64 Alexander street, as controlling upon the question as to whether or not it was within the prohibited distance from the church in question. In either event the saloon was in the same room, and the building, being on the corner, was a building on Alexander street, as well as on Elizabeth street. The statute provides that the traffic in liquor shall not be permitted in any building which shall be on the same street, and within 200 feet of a building occupied exclusively as a church or a school-house. Liquor Tax Law, Laws 1896, c. 112, § 24. The building in question is on the same street, and within the prohibited distance, and the prohibition applies notwithstanding the entrance is on another street. People v. Murray, 5 App. Div. 441, 38 N. Y. Supp. 609, and 39 N. Y. Supp. 1130; Com. v. Whelan, 134 Mass. 206. The question as to whether the saloon was at 64 Alexander street or at 56 Elizabeth street is material, however, in determining whether some of the statements made in the application are true or false. All the licenses for this saloon prior to the time of the enactment of the liquor tax law had been for 64 Alexander street, but it appears that on the day of the passage of that law the board of excise of the city of Albany granted a license to Louis or Alois Rinn to sell strong and spirituous liquor, ales, etc., at No. 56 Elizabeth street, which was afterwards transferred to 58 Elizabeth street. The defendant may have believed that because of this license he was truthfully stating what he did in his application with reference to the location of the premises where he desired to traffic in liquors, and in stating that he could lawfully carry on the traffic there; yet if that license was not lawfully issued, or if the traffic was not lawfully carried on there at the time, while the former statement might have been true the latter would be false.

2. Was the traffic in liquor lawfully carried on in the premises at the time of the taking effect of the liquor tax law? It appears that the building in question is owned by the defendant, Peter Schmidt, and that for about nine years prior to and including the 30th day of April, 1892, he kept a saloon there under licenses issued to him by the excise board of the city of Albany. He then

quit the business, and leased the premises to Louis Rinn, who took possession May 2, 1892, and carried on the saloon business there under license from such excise board until the 1st day of May, 1896. Before taking possession of these premises, Rinn had been conducting a licensed saloon on Second avenue. The liquor tax law, in section 24, provides that traffic in liquor shall not be permitted under the provisions of subdivision 1 of section 11, "in any building which shall be on the same street or avenue and within two hundred feet of a building occupied exclusively as a church or a schoolhouse: * * * provided, however, that this prohibition shall not apply * * * to a place in which such traffic in liquors is actually lawfully carried on when this act takes effect." The act took effect March 23, 1896. The traffic in liquor was then carried on there by Louis Rinn, and had been since May, 1892, as above stated. During the time Rinn occupied the place, Schmidt had no connection with the business. To determine, then, whether Rinn was lawfully carrying on this traffic there at the time the liquor tax law of 1896 took effect, it is necessary to refer to the law in force during the time Rinn occupied this place, and prior to the taking effect of the present law. The excise law (chapter 401, Laws 1892), which was passed April 30th of that year, and took effect immediately, provided, in section 43, that "no person or persons who shall not have been licensed prior to the passage of this act, shall hereafter be licensed to sell strong or spirituous liquors, wine, ale and beer, in any building not used for hotel purposes, and for which a license does not exist at the time of the passage of this act, which shall be on the same street or avenue and within two hundred feet of a building occupied exclusively as a church or a schoolhouse." The section was amended in 1893 by chapter 480, § 11, but the above-quoted clause was not changed by the amendment. The restrictions in the act of 1896, above quoted, clearly apply to the building in which the traffic is to be carried on; but the language of the restriction in the act of 1892, above quoted, has been construed to apply not only to the person seeking a license, but to the place for which he seeks it. People v. Murray, 148 N. Y. 171, 42 N. E. 584. The case cited also holds that when the licensee, established at a place when the act of 1892 took effect, abandoned the business, the prohibition of the statute became absolute as to all new applicants. With this construction of the excise law of 1892 as our guide, it is clear that the licenses to Rinn for 64 Alexander street, and the later one for 56 Elizabeth street, which in either case was the building in question, were improperly granted, and that, therefore, the traffic in liquors was not lawfully carried on there at the time the liquor tax law of 1896 took effect, and also that when Schmidt, the defendant, quit the liquor business, and left that place in May, 1892, he lost whatever rights he might have had in that respect under that law if he had remained. See, also, In re Ritchie, 18 Misc. Rep. 341, 40 N. Y. Supp. 1106; People v. Lammerts, 18 Misc. Rep. 343, 40 N. Y. Supp. 1107.

3. But it is urged that the church in question was not occupied exclusively as a church, and, therefore, that the prohibition of the act does not apply. The organization owning the church building is a regularly incorporated religious society, which has worshipped in this building for 20 years, being accustomed to hold two preaching services and two Sabbath schools there every Sunday. The first or principal floor of the building, having its entrance on Alexander street, is used for the ordinary and usual religious services by the congregation worshipping there, and for weddings, baptisms, and funerals. There seems to be no question that this, the principal floor of the church building, has always been, and is now, occupied exclusively as a church. Under this floor there is a basement, the front part of which is used for storage of fuel, for the heaters, and for church closets. The back or the south end of the basement contains a room fitted up as a schoolroom, with desks, wardrobes, benches, chairs, and tables. This room is used for the meetings of the trustees of the church, and has been used for festivals, fairs, concerts, and other church entertainments which have from time to time been held there for the purpose of raising funds for the church. All these uses are so clearly and so closely connected with the usual functions of a modern church organization as not to impair in any way the exclusive occupancy of the building as a church. The room in question is also occupied upon certain week days as a parochial school, under the direct care and control of the church, and attended mainly by the children of the church members; but, as the act prohibits the liquor traffic within 200 feet of a school as well as of a church, it is not important to consider that fact upon the question we are now discussing.

The contention of the defendant on this branch of the case comes principally, however, from the fact that various associations and societies have been allowed to meet from time to time in the room in question. With reference to the meetings of the Concordia Singing Society, the Women's Society, and the Young People's Society of the church, it is sufficient to say that the proof shows that they are so intimately and closely connected with the work and purposes of the church that they may fairly be considered parts of it. A society known as the First German Protestant Society also meets in this room once a month. It pays the church $25 a year, not as a rent, but to cover the expenses for light, fire, and cleaning. Many of its members and most of its officers belong to the church or congregation in question. While some are members of other churches, all are members of some church. The constitution and by-laws show that, while this is a benefit society to the extent of assessing its members for the purpose of raising moneys to pay death benefits and for the relief of sick members, yet that it is essentially a religious and charitable association, organized "to accomplish a more intimate coalition and alliance of the members of the Protestant faith in the city of Albany and vicinity," and "to give Protestants, through closer alliance, oppor-

tunity to foster, protect, and defend their faith against all attacks." Its membership is limited to those of the Protestant faith, who are required to subscribe to certain religious principles, including "faith in the Trinity of God and in the Holy Bible," as a condition of membership. The directors are regarded as elders of the society. The organization has no contract right, unless it be an implied one to meet in this room, and is simply suffered or permitted by the church to occupy it upon the terms stated, and the privileges given them by the church are revocable by the church at pleasure. Substantially, the same remarks are applicable to the Men and Young Men's Society, which also meets here. While the society is also a benefit society, yet its constitution shows that it is essentially a religious society, organized for the purposes of effecting a closer communication among the members of the church, of sustaining the church, promoting Christian culture, and inducing outsiders to join the church, and its meetings are opened and closed with prayer, in accordance with a ritual used by it. It appears to me, from a careful examination of the constitutions of the two last-named societies, which are the only ones meeting there which may not be properly considered under the proofs as directly connected with the church organization in question, that, if either of them used the building in question for the purpose of its individual organization alone, it could still be fairly regarded as a church, within the meaning of that term, as used in this statute.

The statute in question is to be liberally construed to give full effect to the beneficent purpose for which it was enacted, which is the protection of the church and the school from the influences of the saloon. People v. Murray, 5 App. Div. 441, 38 N. Y. Supp. 609, and 39 N. Y. Supp. 1130. To say that because two or more religious societies occupy the same building for their meetings renders the building one not exclusively occupied as a church, and that, therefore, neither would be entitled to the protection of the statute, would be an absurd perversion of justice. It would rather, it seems to me, be an added reason for applying the protection of the statute. A church has been defined to be "a building consecrated to the honor of God and religion." And. Law Dict. tit. "Church"; Robertson v. Bullions, 9 Barb. 95. Bouvier defines a church to be "a society of persons who profess the Christian religion," and "the place where such persons regularly assemble for worship." Bouv. Law Dict. tit. "Church." I think the word "church," as used in the statute, is comprehensive enough in its meaning to include all the multifarious denominations or societies of those professing the Christian faith, no matter what their varying shades of belief or doctrine may be, and no matter with what ceremony or absence of ceremonies their faith may be evinced. If I am right in this view, the word is broad enough to include each of the two societies in question and the building devoted to their meetings. But, if I am wrong in this respect, I have no hesitation in holding that the occasional or even the regular meeting of these societies in this room, by permission of this church,

does not in any way impair the exclusive occupancy of the building as a church, for the reason that they are essentially religious and charitable organizations closely allied in their principles and in their work to the purposes of the church at large, if not of this particular church. It does not matter that these two societies have, as an incident of their religious and charitable work, the raising of moneys for the relief of sick members and of the widows and orphans of deceased members. Some may regard this feature as of a secular rather than of a religious character, but every religious society must, in the nature of things, have more or less to do with secular affairs in conducting the business necessarily incident to maintaining its organization and prosecuting its work. Because this incidental business happens to be transacted by the society in the church building does not render it one not exclusively occupied for its primary and chief purposes as a church. I think this view is clearly in harmony with the authorities and that the building in question is, under the proofs in this case, occupied exclusively as a church and schoolhouse. People v. Murray, 148 N. Y. 171, 42 N. E. 584; People v. Murray, 5 App. Div. 441, 38 N. Y. Supp. 609, and 39 N. Y. Supp. 1130.

It follows that the defendant is not entitled to hold the certificate issued to him, and that the same should be revoked and canceled, with cost to the petitioner, to be taxed in such sums as may properly be allowed under section 3240 of the Code of Civil Procedure. Ordered accordingly.