(23 Misc. Rep. 1.)

PEOPLE ex rel. YOUNG MEN'S ASS'N FOR MUTUAL IMPROVEMENT IN CITY OF ALBANY v. SAYLES et al.

(Supreme Court, Special Term, Albany County. March, 1898.)

TAXATION—EXEMPTIONS—BUILDING USED FOR EDUCATIONAL PURPOSES.

    A building erected by a voluntary corporation with no capital stock, nor any provision for the declaration of dividends, and used for libraries, reading rooms, rooms for literary and scientific lectures, etc., and including an auditorium which is rented from time to time to outsiders as a theater and public hall, the rent being applied solely to the maintenance of the building, is used exclusively for moral and mental improvement of its members, and for educational, scientific, literary, and library purposes, within Laws 1897, c. 371, so as to prevent taxation of the real or personal property represented by the building and its contents.

Certiorari by the people of the state of New York, on the relation of the Young Men's Association for Mutual Improvement in the City of Albany, against William Sayles and others, assessors of the city of Albany, to review the action of the defendants in assessing the real estate belonging to the relator. Ordered that the assessment be stricken from the roll.

Harris & Rudd, for relator.

John A. Delehanty, Corp. Counsel, for respondents.

CLEARWATER, J. The relator is a corporation organized under the laws of this state, for the purpose of establishing and main-

taining in the city of Albany a public library, branch public libraries, leading rooms, literary and scientific lectures, and other means of promoting moral and intellectual improvement, with power to take by gift, purchase, devise, or otherwise, and to hold, grant, lease, or mortgage its real and personal property, and to erect, maintain, and furnish proper buildings for its accommodation, and to take, hold, and convey such books, cabinets, library furniture, and apparatus as may be necessary for attaining these objects and carrying into effect these purposes. The management and disposition of its real estate is vested in a board of trustees, who have power, among other things, to grant the free use and occupation for such term as they deem proper, of any room, hall, or apartment in any building which may be erected upon the lands of the association, to any society organized for the encouragement of science, art, or literature, or for such other purpose as to them may seem most advantageous to the interest and prosperity of the association. It was originally formed in 1833, and, under its rules, the library rooms are open to the public without charge, and the public has the free use, within the rooms, of its books, periodicals, and newspapers. Membership may be had on the payment of the nominal due of $1 per year, and entitles a member to the use, by withdrawal, of the books in the library, and to a vote in the selection of officers. It is the owner of lands on Washington avenue in the city of Albany, about 120 feet in width, and 210 feet in depth, upon which is the building known as "Harmanus-Bleecker Hall." This property was obtained from moneys derived from gifts coming through the hands of Amasa J. Parker, a former justice of this court, and the then trustee under a deed of trust executed by Harmanus-Bleecker, a philanthropic citizen of Albany, consisting of the lot of ground upon which the building stands and a sum of money, and from public subscriptions by the citizens of Albany and others, aggregating $56,000. These subscriptions varied in amount from 10 cents each, by the school children of the city, to $1,500, contributed by a public-spirited citizen. The building is spacious, substantially constructed, architecturally imposing, and contains, aside from library, recreation, and other rooms, a large room, furnished and used as a theater, and provided with a stage, scenery, drop curtain, flies, and the ordinary apparatus incident to the rendition of dramatic performances. Its auditorium is divided into the usual boxes, orchestra, dress circle, and gallery, and is furnished with chairs for the accommodation of persons attending the entertainments given upon its stage. This room has been and is rented, not for a term of months or years, but from time to time, as opportunity offers, as a theater and public hall, and is said to be the most spacious and best-equipped room for such purposes in the city of Albany. The net rental is all used by the relator in carrying out the objects for which it was incorporated. The entire property has never produced revenue sufficient to meet the expenses incident to its maintenance, and, in consequence of the steadily growing deficit, it has been necessary to mortgage it for the sum of $10,000, in addition to which there is a floating indebtedness of $3,500.

In preparing the assessment roll for 1897, the assessors of Albany

assessed the property at $115,000, subsequently reducing the assessment to $50,000, at which it remains.    The relator sued out a writ of certiorari to review the assessment, claiming that the property is exempt from taxation under the amendment of the general act in relation to taxation (chapter 371, Laws 1897), which, so far as relevant, is as follows:

"The real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for religious, Bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational, scientific, literary, library, patriotic, historical or cemetery purposes, or for the enforcement of laws relating to children or animals, or for two or more such purposes and used exclusively for carrying out thereupon one or more of such purposes; and the personal property of any such corporation shall be exempt from taxation. But no such corporation or association shall be entitled to any such exemption if any officer, member or employé thereof shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof except reasonable compensation for services in effecting one or more of such purposes, or as proper beneficiaries of its strictly charitable purposes; or if the organization thereof for any such avowed purposes be a guise or pretense for directly or indirectly making any other pecuniary profit for such corporation or association, or for any of its members or employés, or if it be not in good faith organized or conducted exclusively for one or more of such purposes.    The real property of any such corporation or association entitled to such exemption held by it exclusively for one or more of such purposes, and from which no rents, profits or income are derived, shall be so exempt, though not in actual use therefor by reason of the absence of suitable buildings or improvements thereon, if the construction of such buildings or improvements is in progress or is in good faith contemplated by such corporation or association.    The real property of any such corporation not so used exclusively for carrying out thereupon one or more of such purposes, but leased or otherwise used for other purposes, shall not be exempt, but if a portion only of any lot or building of any such corporation or association is used exclusively for carrying out thereupon one or more such purposes of any such corporation or association, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion to the extent of the value of such remaining or other portion shall be subject to taxation."

There is no element of gain in the object or the operations of the relator, no capital stock, nor any provision for the making of profits or the declaration of dividends.    It derives its funds from the rent of this theater, the nominal fee paid by its members, the contributions of children, and the largesses of the philanthropic.    Whatever it may receive from any source it holds in trust to be devoted to the objects of its incorporation and increasing its benefits.    Its affairs are conducted for a great public purpose, and the wisdom of attempting to burden such an institution with taxation is questionable.    Is it permissible under the existing law?

It is contended by the learned corporation counsel who represents the assessors that, as the theater is leased for hire to persons not members of the association, the entire property is not used exclusively for the purposes for which the relator is incorporated, and that at least the portion so rented is taxable, and should be assessed; that, in order to come within the provisions of the exemption, it is necessary that the whole property should be, actually and physically, exclusively used and occupied by the association, its members, or the public, without other charge than the nominal fee of membership; and he has fortified his contention with an able and ingenious argu-

ment, and by an elaborate and admirable brief.    In determining the precise shade of meaning to be given to the adverb "exclusively," as used in the act, we should examine the context of the statute for the purpose of ascertaining the legislative intent; for, when that is found, the act will receive that construction which will give it the effect intended, even if, as suggested, it be lacking in lucidity of expression.    It is the duty of every commonwealth to promote the education and moral improvement of the young, to encourage them in acquiring a knowledge of the sciences, of literature, and of the mechanic and fine arts, for it is upon the youth of each generation that the future of the state depends.    This can be done in different ways,—by the founding and maintenance of universities and schools, by the grant of lands and moneys, and by exempting from taxation the property of voluntary associations organized for one or more of these purposes.    The relator is one among many of such organizations, its expressed object being to improve the moral and intellectual condition of the young men of Albany of all nationalities, parties, and sects; and it is not pretended that there has been any diversion of its endowment or income from the purposes for which they were donated and intended.

It is evident that the legislature had in mind the existence and usefulness of organizations of this character in framing and passing the act of 1897; and it seems to me that its object was to exempt from taxation property owned by them actually used in carrying out, upon the property itself, the purposes for which the organization was formed, if of the character specified in the act, and to prevent any corporation or association, no matter how lofty or beneficent its avowed object, from using an averred aim as the pretext for the acquisition and accumulation of property, either real or personal, with the intent of shielding itself behind such an artifice to evade taxation.    If the relator never permitted the use of its theater save to its own members, or to the public without charge, it is admitted that it would then be within the exemption.    The fact that it lets the theater for hire to others, and that it devotes the rent received to carrying out, in other parts of the same building, the purposes for which it is incorporated, does not to my mind deprive it of the protection of the act.

While it may, perhaps, be questioned whether the intermittent character of the letting of the theater is a leasing within the purview of the statute, it cannot justly be said that it is either leased or used for purposes other than the carrying out upon the property itself of the design for which the relator is organized; for, as has before been said, the net rental is all devoted to that end, and up to this time the relator's operations have been confined to the building of which the theater is a part.    The policy of the exemption is the moral and mental improvement of men or women, the formation and maintenance of religious, benevolent, educational, patriotic, scientific, literary, historical, and burial associations, all of which are aids to and accompaniments of a refined and advanced civilization.    This policy is not subverted, but, on the contrary, is promoted by permitting the

relator to devote a portion of its premises to a profitable use, when they are not needed and cannot be used by its own members. By renting the theater, the relator is enabled to increase its income applicable to the purposes of its creation, and to afford to the people of Albany a commodious and well-appointed place of amusement. If the exemption from taxation enables it to obtain a larger net income, it is an advantage to which it is fairly entitled, and which is entirely consistent with the policy upon which the exemption is based. Not only is this the recognized rule here, but in other states, cultivating a broad and liberal policy towards the young, the indigent, and the infirm. Seminary v. Cramer, 98 N. Y. 121, 126; In re Vassar, 127 N. Y. 1–15, 27 N. E. 394; People v. Murray, 148 N. Y. 171–176, 42 N. E. 584; People v. Murray, 5 App. Div. 441, 38 N. Y. Supp. 609, and 39 N. Y. Supp. 1130; Toole v. Board of Sup'rs, 13 App. Div. 471, 37 N. Y. Supp. 9, and 43 N. Y. Supp. 1160; People v. Commissioners of Taxes of New York, 6 Hun, 109, affirmed 64 N. Y. 656; Bank v. Carpenter, 119 N. Y. 550, 23 N. E. 1108; Philadelphia v. Women's Christian Ass'n, 125 Pa. St. 572, 17 Atl. 475; County of North Hampton v. Lafayette College, 128 Pa. St. 132, 18 Atl. 516; Gooch v. Association, 109 Mass. 558; McDonald v. Hospital, 120 Mass. 432; Town of New Haven v. Sheffield Scientific School, 59 Conn. 163, 22 Atl. 156; Willard v. Pike, 59 Vt. 202, 9 Atl. 907.

In reaching this conclusion, I am not unmindful that taxation is the rule, and exemption the exception, and that an intent to exempt property from taxation is not to be presumed; but the true rule is that statutes such as this should be construed, not narrowly by the letter, but liberally and broadly, in view of their object and spirit; and the advantages to be derived from a generous construction will be more than an equivalent to the state and the city of Albany for the loss that may result from the relinquishment of the right of taxation over the property owned by such organizations as the relator, and devoted to kindred purposes. Nor will the state or city suffer by such a construction, as it may safely be assumed that assessors and the courts will scrutinize each case as it arises, and see that a salutary and benignant law is not perverted to base ends. I am of the opinion that the assessment is illegal and erroneous, and should be stricken from the roll. An order to that effect may be framed, and, if counsel disagree as to its provisions, it will be settled by me on two days' notice.