In re PLACE.

(Supreme Court, Appellate Division, Fourth Department. March 26, 1898.)

1. APPEAL—REVIEW—FINDINGS OF JUSTICE.
    A finding by a single justice in a proceeding before him which is supported by the testimony of several witnesses will not be disturbed on appeal to the supreme court.

.2. INTOXICATING LIQUORS—RIGHT TO LICENSE.
    Laws 1893, c. 480, § 43, amending Laws 1892, c. 401, § 43, provided that no person who should not have been licensed prior to the passage of that act should thereafter be licensed to sell liquors within 200 feet of a church or school. Laws 1896, c. 112, § 24, prohibited liquor traffic within the said limits except at a place where the traffic was actually lawfully conducted when the act took effect. Held, that one leasing premises within the limits subsequent to the passage of the former act, from the owner, who had been licensed prior thereto, could not be lawfully authorized to traffic in liquor by a license intended to operate as a transfer of his lessor's license, so as to bring him within the exemption provided in the second act.

3. SAME—BUILDING NEAR CHURCH.
    Nor can one licensed to sell liquors in a building just outside the prescribed limits become entitled to sell liquors in an adjoining building within such limits by renting the latter and cutting an opening between.

4. SAME—HOTEL.
    Laws 1896, c. 112, § 24, prohibits liquor traffic within 200 feet of a church or school, except in a place occupied for an hotel. Laws 1897, c. 312, amending the former, provides that such prohibition shall not apply to a place occupied as an hotel at the time the former act took effect. Held, that the latter act was a legislative interpretation of the former, which, therefore, related to a place occupied for an hotel when it took effect.

.5. SAME—CONSTRUCTION OF STATUTE.
    Laws 1896, c. 112, prohibiting liquor traffic within 200 feet of a school or church, is a law to regulate the liquor traffic, and not a tax law.

.6. SAME.
    Laws 1896, c. 112, prohibiting liquor traffic within 200 feet of schools and churches, should be liberally construed in favor of such institutions and strictly against applicants.

7. SAME—WHAT CONSTITUTES HOTEL.
    Laws 1896, c. 112, § 31, subd. 2, regulating liquor traffic, defines an hotel as a place for the accommodation of guests, with 10 furnished bedrooms, if within a city. A building contained 10 rooms, 2 of which were well furnished, while 5 contained single beds and mattresses only, the remainder being unfurnished. Between the rooms were thin partitions, and only part were lighted. Held not an hotel.

Appeal from special term, Onondaga county.·

Petition by Frank Place, as special agent of the state excise commissioner, against Frank Matty. From a dismissal of the proceeding, petitioner appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

S. B. Mead, for appellant.

James Devine, for respondent.

FOLLETT, J. This proceeding was begun December 23, 1896, by Frank Place, special agent of the commissioner of excise of this state, to procure the revocation of a liquor tax certificate issued July 1, 1896, to Frank Matty, authorizing him to sell liquors at Nos. 301 and 303, corner of South Warren and East Fayette streets, in the city of Syracuse, on the ground that material statements in his application for such certificate were false, and that he was not entitled to receive, and not entitled to hold, such certificate. An order was granted by a justice of the supreme court requiring Frank Matty to show cause why the prayer of the petition should not be granted. He appeared and answered, and upon the issue joined a trial was had, which resulted in a dismissal of the proceeding. An entrance to this alleged hotel is on East Fayette street, and is conceded to be within 200 feet of St. Peter's Church, a building occupied exclusively as a church, and situate on that street. The real estate is owned by Joseph Dunfee, who occupied some portion of it before March 4, 1893. June 10, 1892, a license (No. 376) was granted, pursuant to chapter 401 of the Laws of 1892, to Joseph Dunfee, the owner of the premises, to sell liquors at No. 301 or No. 303, or at both numbers; the particular number or place not being identified. Whether it was a license to sell as a storekeeper, as a druggist, or to sell spirituous and malt liquors to be drank on the premises, or to sell malt liquor only to be drank on the premises, does not appear. This license expired May 2, 1893. March 4, 1893, Frank Matty, the respondent, leased of Joseph Dunfee some portion of these premises, and evidently the portion in which Dunfee was then engaged in selling liquors. May 2, 1893, a license was granted to Frank Matty by the board of excise, authorizing him to sell liquor on these premises for one year, which license was renewed in 1894 and in 1895. What kind of licenses these were does not appear, nor does it appear to which street number they related. July 1, 1896, Frank Matty opened both numbers, or a portion of them, as an hotel, and on that day received from the county treasurer a tax certificate authorizing him to sell liquors as an hotel keeper. Before this date no hotel had ever been kept on the premises, which were not so occupied on the 27th day of June, 1896, when Frank Matty verified his application for the tax certificate. It is contended that the county treasurer was authorized to issue the liquor tax certificate of July 1, 1896, and that it is valid on two grounds: (1) That traffic in liquors was "lawfully carried on" at Nos. 301 and 303, March 23, 1896, when the liquor tax law took effect; (2) that Nos. 301 and 303 were "occupied for an hotel" July 1, 1896, when the tax certificate was issued.

Before discussing this case, the statutes bearing on it will be collated. They are as follows:

50 N.Y.S.—41

Section 43 of the excise law (chapter 401 of the Laws of 1892),
which took effect April 30, 1892, provided:

"Sec. 43. No person or persons who shall not have been licensed prior to the
passage of this act, shall hereafter be licensed to sell strong or spirituous liquors,
wine, ale and beer, in any building not used for hotel purposes, and for which
a license does not exist at the time of the passage of this act, which shall be
on the same street or avenue and within two hundred feet of a building occupied
exclusively as a church or a school-house. The measurements shall be taken
between the principal entrances of the buildings used for such church or school
purposes and the place for which an application for a license has been made."

This section was amended by chapter 480 of the Laws of 1893
(which took effect April 29, 1893) so that it provided:

"Sec. 43. No person or persons who shall not have been licensed prior to the
passage of this act, shall hereafter be licensed to sell strong or spirituous liquors,
wines, ale and beer, in any building not used for hotel purposes, and for which a
license does not exist at the time of the passage of this act, which shall be on
the same street or avenue and within two hundred feet of a building occupied
exclusively as a church or school-house. The measurements shall be taken
from the center of the nearest entrance of the building used for such church or
school purposes to the center of the nearest entrance of the place for which an
application for a license has been made: provided, however, that a board of ex-
cise may, in its discretion, grant permission, in the manner herein provided, to
transfer a license from premises within the limits above mentioned to other
premises within said limits, but at a greater distance from the principal en-
trance of a church or school."

Section 24 of chapter 112 of the Laws of 1896 (the liquor tax law),
which took effect March 23, 1896), provided:

"Sec. 24. Traffic in liquor shall not be permitted: * * * (2) Under the pro-
visions of subdivision one of section eleven of this act, in any building, yard,
booth or other place which shall be on the same street or avenue and within two
hundred feet of a building occupied exclusively as a church or a school house;
the measurements to be taken from the center of the nearest entrance of the
building used for such church or school to the center of the nearest entrance
of the place in which such liquor traffic is desired to be carried on: provided,
however, that this prohibition shall not apply to a place which is occupied for
a hotel, nor to a place in which such traffic in liquors is actually lawfully car-
ried on when this act takes effect, nor to a place which at such date is occupied,
or in process of construction, by a corporation or association which traffics in
liquors solely with the members thereof, nor to a place within such limit to
which a corporation or association trafficking in liquors solely with the members
thereof, when this act takes effect may remove: provided, however, such place
to which corporation or association may so remove, shall be located within two
hundred feet of the place in which such corporation or association so traffics in
liquors when this act takes effect."

This section was amended by chapter 312 of the Laws of 1897
(which took effect April 20, 1897), but the amendment does not relate
to the case at bar, as the transactions all occurred before that date.

This appeal will first be discussed on the respondent's theory that
Nos. 301 and 303 were both lawfully occupied for the traffic in liq-
uors by him and by his predecessor from June 10, 1892, to July 1,
1896, though the evidence, which will be hereinafter referred to,
tends strongly to show that but one of these numbers was so occu-
pied which one was more than 200 feet from St. Peter's Church.
Section 43 of chapter 401 of the Laws of 1892, as amended by chapter
480 of the Laws of 1893, was construed in People v. Murray, 13 Misc.
Rep. 522, 34 N. Y. Supp. 689, reversed 148 N. Y. 171, 42 N. E. 584.

In that case No. 700 Third avenue, in the city of New York, had been continuously used for the sale of liquors for more than 40 years before April 6, 1895, under licenses granted by the board of excise of that city. Thomas B. Nugent was engaged in the sale of liquors at that place under a saloon license which expired April 6, 1895. Prior to this date, Thomas Cairns, the relator, purchased of Nugent his business and license. In 1895, St. Agnes' Church erected a building occupied exclusively by St. Agnes' Parochial School on Third avenue, and within 80 feet of the saloon. April 19, 1895, Cairns applied for a license to sell liquors at No. 700, which was refused by the board of excise on the ground that the saloon was on the same street and within 200 feet of the building, and the applicant then held no license to sell at that place. The board's decision was reviewed on certiorari by the superior court, and reversed. An appeal was taken to the court of appeals which reversed the judgment of the superior court, and affirmed the determination of the board of excise. It was held by the court of appeals that the exception in amended section 43, above quoted, applied only to a person who held a license to sell liquors within the prescribed distance on the 29th of April, 1893, and that it did not embrace the successor of a person who had held such a license; that the privilege created by the section was purely a personal one, and that it did not apply to a place within the prescribed distance of a school, even though the applicant held a saloon license to sell liquor in another part of the city. June 10, 1892, a license (No. 376) was granted to Joseph Dunfee to sell liquors at Nos. 301 or 303, or at both, which license expired May 2, 1893. Whether the license was to sell spirituous and malt liquors to be drank on the premises, or to sell malt liquors only to be drank on the premises, or to be sold in small quantities, but not to be drank on the premises, or whether it was a druggist's license, does not appear. March 4, 1893, Frank Matty entered into possession of one or both numbers, under a lease from the owner, which he has ever since continued to occupy. Whether the license granted to Joseph Dunfee June 10, 1892, was transferred by him to Frank Matty, with the consent of the board of excise of the city of Syracuse, on or about March 4, 1893, was a disputed fact. The records of the board of excise could not be found, and the license was not presented, but several persons testified that the license was so transferred on or about March 4, 1893, and the justice who tried this proceeding so found, which finding will not be disturbed by this court.

The first question presented is whether this transfer was authorized by the statutes then in existence. Under the decision of the court of appeals before referred to, it is apparent that the board of excise had no power to grant at that date a license to Frank Matty to sell liquors within 200 feet of the church. What the board could not do directly, it could not accomplish indirectly. It not being within the power of the board to authorize Frank Matty to sell liquors at that place by an original license issued to him, it was not within its power to grant this privilege by consenting to an assignment of a license to a person not authorized to receive one. He was not a person who could be licensed to sell at that place. This

license, which expired May 2, 1893, conferred no right on Frank Matty to sell liquors at that 'place. May 2, 1893, this illegally assigned license expired, and Frank Matty received a new license for the sale of liquors at that place. Amended section 43, which took effect April 29, 1893, was then in force. The words "license to sell," as construed by the decision referred to, mean legal license to sell, and, under the amended section, Frank Matty not having been legally licensed to sell liquors at that place prior to April 29, 1893, could not be legally licensed to sell liquors at that place under the amended section. People v. Murray, supra; In re Zinzow, 18 Misc. Rep. 653, 43 N. Y. Supp. 714. The same rule applies to the subsequent licenses alleged to have been granted in 1894 and 1895 under the excise law of 1892, as amended. So it follows that Nos. 301 and 303 were not a place in which the traffic in liquors was actually and lawfully carried on March 23, 1896, when the liquor tax law took effect. This being so, the county treasurer had no power to issue a tax certificate authorizing Frank Matty to engage in the sale of liquors at this place as a keeper of an hotel. It should be noted that under the liquor tax law the prohibition applies to place, instead of to person.

Thus far the appeal has been discussed on the theory that the licenses issued prior to the tax certificate were to sell liquor at Nos. 301 and 303. Frank Matty testified that when he went into possession, his premises were more than 200 feet from St. Peter's Church, and that he afterwards added to the premises first occupied by him a 22-foot store, which brought the entrance to his place within 146 or 148 feet of the entrance of the church. He also testified that he began paying additional rent for his enlarged place of business June 1, 1896, and from this evidence it is inferable that prior to the date of the present tax certificate he had no license to sell liquor within 200 feet of the church, and that no license had been granted to sell liquor at both numbers,—301 and 303.

I think it cannot be successfully contended, under any of these acts, that, in case a license existed authorizing a person to sell liquor just outside of the prescribed limits, he can, by renting an adjoining building within 200 feet of a church, and cutting an opening between them, become entitled to a license to sell liquors in the buildings so united, the entrance to which is, as in this case, within less than 200 feet of a church.

It is contended that July 1, 1896, Nos. 301 and 303 were occupied for an hotel, and therefore the tax certificate is valid. It is said that the verb "is" in the following clause, "that this prohibition shall not apply to a place which is occupied for an hotel," does not relate to the date when the act took effect, but to the date when a certificate is issued, and that the words should be interpreted to mean, "is or shall be occupied for an hotel." Under this interpretation an hotel could at any time after the law took effect be erected or opened within 200 feet of a school or church, and the keeper obtain a tax certificate. Such, I think, was not the intention of the legislature. By chapter 312 of the Laws of 1897 this subdivision was amended so it now reads: "That this prohibition shall not apply to

a place which on the twenty-third day of March, eighteen hundred
and ninety-six, was legally occupied as a hotel." This is a legis-
lative interpretation of the words first quoted. It was not the in-
tention of the legislature to authorize the sale of liquors at any
place, within 200 feet of a church, which should thereafter be oc-
cupied as an hotel, but simply to authorize sales to be continued on
premises legally occupied as an hotel, or legally used for the sale of
liquors, March 23, 1896, when the act took effect. As before stated,
it is conceded that the premises were never occupied as an hotel until
July 1, 1896. The provision in respect to churches and schools is
an exception to the general policy of the act, which is not a tax law,
but is a law to regulate and control traffic in liquor. People v. Mur-
ray, 149 N. Y. 367, 44 N. E. 146. The courts have uniformly held
that the exceptions in respect to churches and schools should be lib-
erally construed in their favor and strictly against applicants for
licenses within the prescribed distance, and so as to prevent the
mischief aimed at by the limitation. People v. Murray, supra; Peo-
ple v. Murray, 5 App. Div. 441, 38 N. Y. Supp. 609, and 39 N. Y.
Supp. 1130; People v. Excise Board, 7 Misc. Rep. 415, 27 N. Y.
Supp. 983; In re Zinzow, 18 Misc. Rep. 653, 43 N. Y. Supp. 714;
People v. Lammerts, 18 Misc. Rep. 343, 40 N. Y. Supp. 1107, affirmed
14 App. Div. 628, 43 N. Y. Supp. 1161. Again, subdivision 2 of sec-
tion 31 of the liquor tax law, as it existed when this tax certificate
was granted, and before the amendment of 1897, defined an hotel
as follows:

"The term 'hotel' as used in this act shall mean a building or place which is
regularly kept open for the feeding and lodging of guests, and in which there
shall be at least ten furnished bedrooms for their occupancy if situate in any
city, incorporated village, or within two miles of the corporate limits of either;
and at least six bedrooms if situate in any other place."

Frank Matty was sworn, and described his hotel. He testified that
it had ten bedrooms,—two on the second floor and eight on the first
floor. The two on the second floor were furnished, and had windows,
and they seemed to be bedrooms in the ordinary acceptation of the
term. The eight bedrooms on the first floor are described as fol-
lows: Five are 7 feet and 3 inches long, and vary in width from 5
feet and 8 inches to 7 feet and 2 inches; two are 16 feet and 6 inches
long and 12 feet wide; and one is 9 feet and 6 inches long and
7 feet and 3 inches wide. In five of these bedrooms were single
beds and mattresses complete. The other three do not appear to
have been furnished. He testified that these eight bedrooms were
divided by board partitions 1 inch thick, papered on both sides, which
were only 7 feet and 1 inch in height; that the ceiling above these
bedrooms was over 9 feet above the floor, and that none of these
so-called bedroom partitions extends within two feet of the ceiling.
Four of these bedrooms were lighted by windows, and four were
dark. These rooms were not bedrooms, within any fair definition
of the word, and only five of the eight bedrooms on the first floor
were furnished as such, as required by the section last quoted. This
building, at the time this liquor tax certificate was issued, and at
the time of the trial of this proceeding, was not an hotel within the

statute, and the respondent had no right to receive or retain a tax certificate authorizing him to sell liquor in that building as an hotel keeper. Entertaining these views, it becomes unnecessary to consider whether, in case a building within 200 feet of a church, which has been licensed to sell on prescription, or by the small measure not to be drank on the premises, or to sell under what is known as a "saloon keeper's license," can be converted into an hotel, and sales of liquors therein authorized to be drank on the premises every day in the week under an hotel keeper's tax certificate. No intimation is made on this question. From the views expressed it follows that when the liquor tax law took effect the sale of liquor was not legally carried on on these premises, and that the county treasurer had no authority to grant a certificate.

The judgment should be reversed, and the liquor tax certificate issued to the respondent canceled, with costs in favor of the relator, to be taxed.

HARDIN, P. J., and GREEN, J., concur.

ADAMS, J. I am inclined to think that the evidence in this case was sufficient to sustain the conclusion that the transfer by Joseph Dunfee to the defendant, Matty, in the month of March, 1893, of the license held by the former was of such a character as to confer upon the transferee the legal right to traffic in liquors at the place where that business was conducted. Upon the hearing the defendant attempted to show what steps had been taken to obtain such transfer, and thereupon the petitioner's counsel stated in open court that he should not dispute the fact that the transfer was made at the time the defendant said it was. This, I think, was equivalent to stipulating that the transfer was regularly made; and, as it is conceded that the defendant's license thus obtained was renewed each year, it would seem to follow that he was actually and lawfully carrying on the business of trafficking in liquors at his saloon on the 23d day of March, 1896; and, had he been content to have rested his right to a tax certificate upon this fact, I fail to see why he would not have established that right within the provisions of section 24 of the liquor tax law (chapter 112, Laws 1896, as amended by chapter 312, Laws 1897).

It seems, however, that the defendant entertained some doubt respecting his right to maintain a saloon the nearest entrance to which was within less than 200 feet of St. Paul's Church, and, in order to obviate this difficulty, and remove the doubt, he attempted, before applying for his tax certificate, to convert his saloon into an hotel. Upon the hearing before the learned trial justice evidence was given which was designed to show that he had successfully accomplished this metamorphosis, and it was found that the defendant's place was a legal hotel, that it complied with all the requirements of the law as such, and that the defendant was entitled to conduct his "hotel pursuant to the license obtained by him under chapter 112 of the Laws of 1896." This finding is, in my opinion, wholly unwarranted by the undisputed facts of the case. Upon the

contrary, it is impossible for me to read the evidence contained in the record without reaching the conclusion that the defendant's attempt to convert his saloon into an hotel was a mere subterfuge and afterthought, and that, if the defendant were permitted by the courts to succeed in this attempt, it would encourage other liquor dealers similarly situated to adopt the same course, and consequently lead to innumerable evasions of the law which would ultimately result in depriving it of all force and efficacy. I am of the opinion, therefore, that the learned trial justice was in error in reaching the conclusion he did, and, if so, it follows that the defendant made a false statement in his application for a tax certificate.

The order appealed from should consequently be reversed, and his certificate canceled.

HARDIN, P. J., and WARD, J., concur.