(Supreme Court, Special Term, Ulster County.   May 4, 1898.)

1. INTOXICATING LIQUORS—PROHIBITED DISTRICT.

Laws 1896, c. 112, § 24, subd. 2, prohibited liquor traffic in any building on the same street and within 200 feet of a building occupied exclusively as a church, to be measured from the center of the nearest church entrance to the center of the nearest entrance of the building in which the traffic was carried on; and Laws 1897, c. 312, amended the same by providing that the measurement should be in a straight line.   *Held*, that in measuring between a church and a corner building on the same street, whose entrance was on another street, the measurement intended was the shortest and most direct distance between the two points, without regard to the way the streets ran between them.

2. SAME—CHURCH BUILDING.

Occupation of the basement of a church at certain times by societies of a charitable, benevolent, literary, and patriotic character, composed principally of members of the church congregation, and the occupation being mainly to assist the congregation in paying its expenses, would not deprive it of the protection contemplated by the act.

3. STIPULATION—CONCLUSIVENESS.

    Where an application is made to cancel a liquor-tax certificate because the building in which the liquor traffic is carried on is within certain prohibited limits, and upon the hearing the parties stipulate that it was carried on there on a certain date, the stipulation is conclusive upon that question.

Application to revoke and cancel liquor-tax certificate No. 14,111, granted to Bernard E. McCusker. Application denied.

George E. Sands, for petitioner.

Howard & Peck and Frederick A. Chew, for defendant and the county treasurer of Rensselaer county.

CLEARWATER, J. This is an application for the revocation of a liquor tax certificate, upon the grounds (1) that the traffic is conducted in a building on the same street and within 200 feet of a church; (2) that the defendant made false statements in the application for the transfer of his certificate. The matter is submitted upon the petition, answer, and the testimony taken before a referee. The defendant originally obtained a liquor-tax certificate for the carrying on of his business at Nos. 28 and 30 Division street, in the city of Troy,—a building owned by his sister, who terminated his lease, and let the property to two other brothers, whereupon the defendant had his certificate transferred to a building upon the southwest corner of Third and Division streets in that city. As originally constructed, the latter building had three entrances on Division, and one on Third street. The entrance on Third street has never been used by the defendant,—is nailed up and permanently closed,—and a portion of the bar projects beyond the interior opening. On the adjoining lot upon Third street is the Jewish synagogue of Berith Sholom. Laws 1896, c. 112, § 24, subd. 2, prohibited traffic in liquor in any building on the same street with, and within 200 feet of, a building occupied exclusively as a church,—the measurement to be taken from the center of the nearest entrance of the church to the center of the nearest entrance of the place in which the traffic was to be carried on; and it has been held that a building situate upon a corner of two streets is within the inhibition of the act, notwithstanding it fronts on a different street from the church. People v. Murray, 5 App. Div. 441, 38 N. Y. Supp. 609, and 39 N. Y. Supp. 1130; In re Zinzow, 18 Misc. Rep. 653, 43 N. Y. Supp. 714. By Laws 1897, c. 312, § 24, subd. 2, however, the law was amended so as to provide that the measurement shall be taken in a straight line from the center of the nearest entrance of the church to the center of the nearest entrance of the place in which the traffic is to be carried on. It is claimed by the defendant that this means that the measurement must be made in a line as the street runs, and, if thus made, the Division street entrance cannot be reached as to include it; it is necessary, on reaching the corner of Third street, to turn at right angles. I do not so understand the law. A straight line is one free from angularities or curvatures, and is the shortest and most direct distance between two points. Thus measured, all the Division street entrances are within the prohibited distance.

It is also claimed by the defendant that the synagogue is not a building occupied exclusively as a church, within the meaning of the

statute.   Five societies (the Independent Order of Benai Berith, the Independent Order of Kesher Shel Barsel, the Free Sons of Israel, the Sisterhood Benevolent Society, and the Young People's Association) meet in the basement, and pay the trustees of the synagogue a small rental, which defrays the expense of light, fuel, and the service of a janitor.   This rent goes into the treasury of the synagogue, and is used for its maintenance.   Membership in these societies is confined to persons of the Jewish faith, and their object is the union of Israelites in promoting the interests of the race, elevating the character of the Jewish people, inculcating principles of philanthrophy, honor, and patriotism, the support of science and art, alleviating the wants of the poor, visiting the sick, aiding the victims of persecution, and protecting and assisting the widow and orphan.   They are of a sectarian, but not of a religious, character.   Ninety per cent. of their members are members of the congregation of Berith Sholom, and the principal reason for using the basement of the temple as a place of meeting is to aid its congregation in defraying its expenses.   I do not think that this use of the basement of the synagogue by these benevolent societies is at all inconsistent with its use as a place of worship, nor do I think that its effect is to deprive the synagogue of the protection of the act.   The precise shade of meaning to be given to the term "exclusively" has been so recently and fully discussed in the case of People v. Sayles, 23 Misc. Rep. 1, 50 N. Y. Supp. 8, that it is unnecessary to reiterate here the views there expressed.   They are in accord with the authorities to which reference is made in the opinion in that case, and are controlling here.   It is but proper to add that this proceeding is not prosecuted by any person connected with the synagogue, but by one Richard N. Holden, who admits entertaining a feeling of bitter hostility to the defendant, and whose action, it is charged, is inspired in part by this ill will, and in part by the brothers of the defendant, who succeeded him as tenants of his sister's property.   While the animus of the complainant is not specially pertinent, it is entirely apparent.

The act of 1897 provided, however, that the prohibition relative to a church should not apply to a place in which traffic in liquor was actually carried on on the 23d day of March, 1896.   At the close of all the testimony before the referee the following stipulation, assented to by counsel for all the parties, was entered upon the minutes, and is reported with them to the court:

"April 6, 1898.

"It is admitted by the counsel for the respective parties that the premises now occupied by Bernard E. McCusker as a saloon, to wit, Nos. 60 and 62 Division street, or 161 Third street, as the case may be, have been regularly licensed and occupied continuously as a saloon for the sale of liquor for a period of at least ten years, without any interruption or cessation in the business up to the present time, and that no other business except a saloon business was carried on there."

Parties, by their stipulations, may in many ways make the law for any legal proceeding in which they are impleaded, which not only binds them, but which the courts are bound to enforce.   They may stipulate away statutory, and even constitutional, rights.   They may stipulate for shorter limitations of time for bringing actions than are prescribed by statute.   They may stipulate that the decision of a court shall be final, and thus waive the right of appeal.   And all stipulations made

by parties for the government of their conduct, the control of their rights, or for the guidance of the court in the trial of a cause, or the conduct of litigation of any character, not unreasonable, or against good morals or public policy, will be enforced by the courts. In re Railroad Co., 98 N. Y. 447–453; Buel v. Trustees, 3 N. Y. 197; Embury v. Conner, Id. 511; Sherman v. McKeon, 38 N. Y. 266; Allen v. Commissioners, Id. 312; Vose v. Cockcroft, 44 N. Y. 415; Phyfe v. Eimer, 45 N. Y. 102; De Grove v. Insurance Co., 61 N. Y. 594; Ogdensburgh & L. C. R. Co. v. Vermont & C. R. Co., 63 N. Y. 176; Wilkinson v. Insurance Co., 72 N. Y. 499; Baird v. Mayor, etc., of City of New York, 74 N. Y. 382; Hilton v. Fonda, 86 N. Y. 339; Steen v. Insurance Co., 89 N. Y. 315; In re Cooper, 93 N. Y. 507; Stedeker v. Bernard, Id. 589. Although the statute uses the adverb "lawfully," and the stipulation "regularly," it is, so far as this proceeding is concerned, an idle waste of time and words to undertake to distinguish them in meaning. "Regularly," in common English means constituted, appointed, or conducted in the proper manner; conformable to law or custom; duly authorized. And if, as agreed by all the parties to this proceeding, the premises of the defendant were regularly thus licensed and occupied continuously at least nine years prior to the passage of the act of 1897, they are clearly within the exemption. This stipulation renders further discussion of the case useless, and the application to revoke the defendant's license is denied, with such costs and disbursements as are properly taxable in a special proceeding.