Gildersleeve, J.
— A writ of certiorari, heretofore duly issued out of this court, brings before us for review the refusal of the board of excise to grant and issue a saloon license to the relator, Thomas Cairns, for the premises No. 700 Third avenue, in the city of New York. The relator, for fourteen years last past, has been engaged in selling wines and liquors at retail, under licenses granted by the board of excise in this city, and for three years last past has been engaged in such business in Twelfth street, in said city, under licenses issued to him in his own proper name by the commissioners constituting the board of excise. For a period of upwards of forty years the saloon business has been conducted on the premises No. 700 Third avenue, and continuously during that time, under license or permission of the board of excise, down to the 6th day of April, 1895. The relator purchased the good will of said business and the then existing license from the licensee, one Thomas B. Nugent, whose license expired on the 6th day of April, 1895, and obtained from the landlord a lease of the premises for the term of ten years, and entered into engagements and obligations in the fitting up of the place as a saloon for carrying on the liquor business. The business, by reason of the long period of time it had been conducted upon the premises, had acquired a good will which had a large commercial value. The board of excise has a general rule of long standing, that is strictly adhered to, which provides that the number of saloons shall not be increased, and that an applicant for a license must first surrender for cancellation a license granted by the board of excise with his application for a license, so that in granting the application there may be no increase of the number of places licensed for the sale of liquors within this city. This rule, and the practice thereunder, has given to the certificates evidencing such licensing a defined commercial value. Relying upon this rule, and upon the facts above set forth, the relator purchased the license aforesaid, expiring on April 6, 1895, and entered upon the work of fitting up the place, as we have above stated. With full knowledge of the existence of the saloon in question for many years, under several licenses, as afore *733 said, the persons controlling the Church of St. Agnes, erected in the year 1893, within eighty feet of the main entrance to the saloon, the school building occupied by St Agnes’ Parochial School. The circumstance, under section 43 of the excise law, as construed by the respondents, places the relator’s building within restricted territory, available only for saloon purposes to persons who were licensed therein at the time of the passage of this act in the particular building for which the license is sought. Accordingly the respondent denied the relator’s application for a license on the following grounds:
“ The application of Thomas Cairns for a saloon license for the premises No. 700 Third avenue is rejected, and a license refused, for the reason that Thomas Cairns was not licensed at these premises prior' to April 29, 1893, and the premises are on the same street with, and the nearest entrance to the said premises is within 200 feet of, the nearest entrance to a building occupied exclusively as a school.”
It is contended by the counsel for the relator that the edifice known as “St. Agnes’ Parochial School” was not occupied exclusively as a schoolhouse, and therefore was not an obstacle to the granting of the license. We do not agree with this contention. It seems to us that the facts disclosed before the respondents fully warrant the conclusion that the building in question was occupied exclusively as a school. The determination of the question here presented depends upon the construction that should be given to section 43 of chapter 401 of the Laws of 1892, as amended by chapter 480 of the Laws of 1893. The section reads as follows:
“ No person or persons, who shall not have been licensed prior to the passage of this act, shall hereafter be licensed to sell strong or spirituous liquors, wines and beer, in any building not used for hotel purposes, and for which a license does not exist at the time of the passage of this act, which shall be on the same street or avenue, and within 200 feet of a building occupied exclusively as a church or schoolhouse.”
The respondents claim that the effect of this section is to take from them, the power to grant a license for a saloon within 200 feet of a church or schoolhouse to any person other than to the individual who held such license at the time of the passage of the act. They refused the license solely on the ground that the relator did not hold a license for this particular place at the time of the passage of the act. They admit that he has in every other respect met the requirements of the law and of their board, and established his eligibility to receive a license. The relator, on his part, contend (1) that section 43 applies only to a building for which a license did not exist when the act was passed; and (2) that the prohibition against persons not then licensed applies only against licensing them for buildings, within the prohibited distance, for which a license did not then exist; and that, as to the buildings for which licenses then did exist, a person not licensed when the act was passed would be entitled to take out a lice use within the prohibited distance. In other words, the respondents say that no one can secure a renewal of a license for a saloon within the prohibited distance except the indi *734 vidual who held the license prior to the passage of the act; while the relator asserts that section 43 has no application to the case of hotels or buildings for which a license existed at the time of the passage of the act, as those cases were taken out of the operation of that section by the terms of the exception, and that as to hotels and buildings within the prohibited distance which had licenses at the time of the passage of the act, any person otherwise eligible might secure a license. It was manifestly the purpose of the legislature to preserve a reasonable distance between the saloon and the school, and by the enactment under consideration, to limit the licensing of saloons in close proximity to schools and churches. The lawmakers, by this effort to protect the young and impressionable from the evil influences of the saloon, were exercising a power for the welfare of the community; but at the same time they considered it good policy not to destroy the value of saloons already existing. Applying to the1 section of the statute under consideration the well established rules of construction, we are of opinion that it was the intention of the legislature, in enacting section 43, to provide that buildings, within the prohibited distance, used for hotel purposes, or for which licenses existed when the act was passed, should not be affected by it, and that as to such building any person, otherwise eligible, should have a license. The fair reading of the prohibition clearly indicates that the legislature intended not to destroy the property rights in places of business ' which were then established, but that no other places should be licensed within the prohibited area, other than those which were licensed at the time of the passage of the act. To allow any one who held a license at the time of the passage of this act to conduct the saloon business anywhere within the 200 feet limit would not be carrying out what we have above declared to be the manifest intention of the legislature. Such an interpretation would permit the establishment of any number of saloons within the 200 feet limit, in cloSe proximity to schools and churches, for a considerable number of years, and until such time as the licensees existing in this city at the time of the passage of the act went out of the business, or departed this life. The true construction and interpretation of the act under consideration calls for the conclusion that the legislature has not interfered with such property rights as arose from the possession of a license to carry on the sajoon business in a particular building, and existing when the act was passed. This construction is the only one that can be given without violating a long line of recognized authorities, which declare the rule that a statute must be so construed as to promote in the fullest manner the policy and object of the legislature. The saloon in question has been continuously licensed for forty years, and has a good will of large commercial value. Shall it be said that the managers of-the church or school can erect a building for their purposes, deliberately and knowingly, in the neighborhood of such a saloon, and thereby destroy the use for saloon purposes of a building thus occupied ? All are presumed to know the law, and it is not too much to ask of the manager's of ecclesiastical and educational institutions that in selecting a site for their buildings *735 they require in the neighborhood in which they propose to locate as to the existence of established rights of saloons of long standing, that enjoyed the protection of the law at the time of the passage of the act under consideration. The grounds upon which the respondents place their refusal of the relator’s application are not tenable. The relator is entitled to the license applied for, and the decision of the board of excise should be reversed, with $50 costs, and a mandamus should issue requiring said board to grant a. license to the relator.