In the Matter of the Petition of FRANK PLACE, Appellant, for an Order Revoking and Canceling the Liquor Tax Certificate of FRANK MATTY, Respondent.

*Intoxicating liquor — a license, to sell liquor within 200 feet of a church, issued under the Excise Law of 1892 is a personal privilege and not assignable — status of the assignee under that act and the Liquor Tax Law — connecting a building within 200 feet of a church with a liquor saloon outside of such limit — construction of the exemption given to hotels in this respect — what are not hotel "bedrooms" within the Liquor Tax Law.*

Under section 43 of the Excise Law of 1892 (Chap. 401), as amended by chapter 480 of the Laws of 1893, which amendment went into effect the 29th day of April, 1893, providing that "no person or persons, who shall not have been licensed prior to the passage of this act, shall hereafter be licensed to sell strong or spirituous liquors, wines, ale and beer in any building not used for hotel purposes, and for which a license does not exist at the time of the passage of this act, which shall be on the same street or avenue and within two hun-

dred feet of a building occupied exclusively as a church or schoolhouse," the board of excise of a city had no power, on March 4, 1893, to consent to the assignment of a license expiring May 2, 1893, by the licensee of premises "not used for hotel purposes," situate "within two hundred feet of a building occupied exclusively as a church or schoolhouse," to a tenant of the licensee.

*Semble,* that the privilege created by section 43 was a purely personal one.

The assignee of the license, not having been legally licensed to sell liquors in the place in question on April 29, 1893, could not be subsequently legally licensed to sell liquors at that place under said amended section 43, nor under chapter 112 of the Laws of 1896.

A person holding a license, or a liquor tax certificate, for premises just outside of the 200-foot limit cannot, by renting an adjoining building, which is within 200 feet of a church, and cutting an opening between the buildings, become entitled to a license to sell liquor in the buildings so united, the entrance to which is within 200 feet of the church.

The provision of subdivision 2 of section 24 of chapter 112 of the Laws of 1896, declaring that the prohibition against sales of liquor within 200 feet of a church "shall not apply to a place which *is* occupied for a hotel" only operates to exempt a place which was used for a hotel on March 23, 1896, when the act took effect, and not a place which was thereafter being used as a hotel when the tax certificate was granted.

What rooms are not "bedrooms" within the requirements of subdivision 2 of section 31 of chapter 112 of the Laws of 1896, defining the term "hotel," as used in that act, considered.

APPEAL by the petitioner, Frank Place, from an order of the Supreme Court, made at the Onondaga Special Term and entered in the office of the clerk of the county of Onondaga on the 7th day of June, 1897, denying the petitioner's application to have canceled a liquor tax certificate issued to Frank Matty.

*S. B. Mead,* for the appellant.

*James Devine,* for the respondent.

FOLLETT, J.:

This proceeding was begun December 23, 1896, by Frank Place, special agent of the Commissioner of Excise of this State, to procure the revocation of a liquor tax certificate issued July 1, 1896, to Frank Matty, authorizing him to sell liquors at Nos. 301 and 303, corner of South Warren and East Fayette streets in the city of Syracuse, on the ground that material statements in his application for such certificate were false, and that he was not entitled to receive and not entitled to hold such certificate. An order was granted by

a justice of the Supreme Court requiring Frank Matty to show cause why the prayer of the petition should not be granted. He appeared and answered, and upon the issue joined a trial was had which resulted in a dismissal of the proceeding.

An entrance to this alleged hotel is on East Fayette street, and is conceded to be within 200 feet of St. Paul's Church, a building occupied exclusively as a church and situate on that street. The real estate is owned by Joseph Dunfee, who occupied some portion of it before March 4, 1893. June 10, 1892, a license, No. 376, was granted pursuant to chapter 401 of the Laws of 1892, to Joseph Dunfee, the owner of the premises, to sell liquors at No. 301 or No. 303, or at both numbers, the particular number or place not being identified. Whether it was a license to sell as a storekeeper, as a druggist, or to sell spirituous and malt liquors to be drank on the premises, or to sell malt liquor only to be drank on the premises, does not appear. This license expired May 2, 1893. March 4, 1893, Frank Matty, the respondent, leased of Joseph Dunfee some portion of these premises, and evidently the portion in which Dunfee was then engaged in selling liquors. May 2, 1893, a license was granted to Frank Matty by the board of excise, authorizing him to sell liquor on these premises for one year, which license was renewed in 1894 and in 1895. What kind of licenses these were does not appear, nor does it appear to which street number they related. July 1, 1896, Frank Matty opened both numbers, or a portion of them, as a hotel, and on that day received from the county treasurer a tax certificate authorizing him to sell liquors as a hotelkeeper. Before this date no hotel had ever been kept on the premises, which were not so occupied on the 27th day of June, 1896, when Frank Matty verified his application for the tax certificate.

It is contended that the county treasurer was authorized to issue the liquor tax certificate of July 1, 1896, and that it is valid on two grounds:

(1) That traffic in liquors was "lawfully carried on" at Nos. 301 and 303, March 23, 1896, when the Liquor Tax Law took effect.

(2) That Nos. 301 and 303 were "occupied for a hotel" July 1, 1896, when the tax certificate was issued.

Before discussing this case the statutes bearing on it will be collated. They are as follows:

Section 43 of the Excise Law (Laws of 1892, chap. 401), which took effect April 30, 1892, provided:

" § 43. No person or persons, who shall not have been licensed prior to the passage of this act, shall hereafter be licensed to sell strong or spirituous liquors, wine, ale and beer, in any building not used for hotel purposes, and for which a license does not exist at the time of the passage of this act, which shall be on the same street or avenue and within two hundred feet of a building occupied exclusively as a church or a schoolhouse. The measurements shall be taken between the principal entrances of the buildings used for such church or school purposes and the place for which an application for a license has been made."

This section was amended by chapter 480 of the Laws of 1893, which took effect April 29, 1893, so that it provided:

" § 43. No person or persons, who shall not have been licensed prior to the passage of this act, shall hereafter be licensed to sell strong or spirituous liquors, wines, ale and beer, in any building not used for hotel purposes, and for which a license does not exist at the time of the passage of this act, which shall be on the same street or avenue and within two hundred feet of a building occupied exclusively as a church or schoolhouse. The measurements shall be taken from the center of the nearest entrance of the building used for such church or school purposes to the center of the nearest entrance of the place for which an application for a license has been made; provided, however, that a board of excise may, in its discretion, grant permission in the manner herein provided, to transfer a license from premises within the limits above mentioned to other premises within said limits, but at a greater distance from the principal entrance of a church or school."

Section 24 of chapter 112 of the Laws of 1896 (the Liquor Tax Law), which took effect March 23, 1896, provided:

" § 24. Traffic in liquor shall not be permitted * * *

" 2. Under the provisions of subdivision one of section eleven of this act, in any building, yard, booth or other place which shall be on the same street or avenue and within two hundred feet of a building occupied exclusively as a church or a schoolhouse; the measurements to be taken from the center of the nearest entrance of the building used for such church or school to the center of the

nearest entrance of the place in which such liquor traffic is desired to be carried on; provided, however, that this prohibition shall not apply to a place which is occupied for a hotel, nor to a place in which such traffic in liquors is actually lawfully carried on when this act takes effect, nor to a place which at such date is occupied, or in process of construction, by a corporation or association which traffics in liquors solely with the members thereof, nor to a place within such limit to which a corporation or association trafficking in liquors solely with the members thereof when this act takes effect may remove; provided, however, such place to which such corporation or association may so remove shall be located within two hundred feet of the place in which such corporation or association so traffics in liquors when this act takes effect."

This section was amended by chapter 312 of the Laws of 1897 (which took effect April 20, 1897), but the amendment does not relate to the case at bar, as the transactions all occurred before that date.

This appeal will first be discussed on the respondent's theory that Nos. 301 and 303 were both lawfully occupied for the traffic in liquors by him and by his predecessor from June 10, 1892, to July 1, 1896, though the evidence, which will be hereinafter referred to, tends strongly to show that but one of these numbers was so occupied, which one was more than 200 feet from St. Paul's Church.

Section 43 of chapter 401 of the Laws of 1892, as amended by chapter 480 of the Laws of 1893, was construed in *People ex rel. Cairns* v. *Murray* (13 Misc. Rep. 522; revd., 148 N. Y. 171). In that case No. 700 Third avenue, in the city of New York, had been continuously used for the sale of liquors for more than forty years before April 6, 1895, under licenses granted by the board of excise of that city. Thomas B. Nugent was engaged in the sale of liquors at that place under a saloon license, which expired April 6, 1895. Prior to this date Thomas Cairns, the relator, purchased of Nugent his business and license. In 1895 St. Agnes' Church erected a building occupied exclusively by St. Agnes' Parochial School on Third avenue and within 80 feet of the saloon. April 19, 1895, Cairns applied for a license to sell liquors at No. 700, which was refused by the board of excise, on the ground that the saloon was on the same street and within 200 feet of the building, and that the applicant

then held no license to sell at that place. The board's decision was reviewed on certiorari by the Superior Court and reversed. An appeal was taken to the Court of Appeals, which reversed the judgment of the Superior Court and affirmed the determination of the board of excise. It was held by the Court of Appeals that the exception in amended section 43, above quoted, applied only to a person who held a license to sell liquors within the prescribed distance on the 29th of April, 1893, and that it did not embrace the successor of a person who had held such a license; that the privilege created by the section was purely a personal one, and that it did not apply to a place within the prescribed distance of a school even though the applicant held a saloon license to sell liquor in another part of the city.

June 10, 1892, a license, No. 376, was granted to Joseph Dunfee to sell liquors at Nos. 301 or 303, or at both, which license expired May 2, 1893. Whether the license was to sell spirituous and malt liquors to be drank on the premises, or to sell malt liquors only to be drank on the premises, or to be sold in small quantities, but not to be drank on the premises, or whether it was a druggist's license, does not appear. March 4, 1893, Frank Matty entered into possession of one or both numbers, under a lease from the owner, which he has ever since continued to occupy. Whether the license granted to Joseph Dunfee June 10, 1892, was transferred by him to Frank Matty with the consent of the board of excise of the city of Syracuse on or about March 4, 1893, was a disputed fact. The records of the board of excise could not be found and the license was not presented, but several persons testified that the license was so transferred on or about March 4, 1893, and the justice who tried this proceeding so found, which finding will not be disturbed by this court.

The first question presented is whether this transfer was authorized by the statutes then in existence. Under the decision of the Court of Appeals before referred to, it is apparent that the board of excise had no power to grant at that date a license to Frank Matty to sell liquors within 200 feet of the church. What the board could not do directly it could not accomplish indirectly. It not being within the power of the board to authorize Frank Matty to sell liquors at that place, by an original license issued to him, it

was not within its power to grant this privilege by consenting to an assignment of a license to a person not authorized to receive one. He was not a person who could be licensed to sell at that place. This license, which expired May 2, 1893, conferred no right on Frank Matty to sell liquors at that place. May 2, 1893, this illegally assigned license expired and Frank Matty received a new license for the sale of liquors, at that place. Amended section 43, which took effect April 29, 1893, was then in force. The words "licensed to sell," as construed by the decision referred to, mean legal license to sell, and under the amended section Frank Matty, not having been legally licensed to sell liquors at that place prior to April 29, 1893, could not be legally licensed to sell liquors at that place under the amended section. (*People ex rel. Cairns* v. *Murray, supra; Matter of Zinzow*, 18 Misc. Rep. 653.) The same rule applies to the subsequent licenses alleged to have been granted in 1894 and 1895 under the Excise Law of 1892 as amended, so it follows that Nos. 301 and 303 were not a place in which the traffic in liquors was actually and lawfully carried on March 23, 1896, when the Liquor Tax Law took effect. This being so, the county treasurer had no power to issue a tax certificate authorizing Frank Matty to engage in the sale of liquors at this place as a keeper of a hotel. It should be noted that under the Liquor Tax Law the prohibition applies to *place* instead of to *person*.

Thus far the appeal has been discussed on the theory that the licenses issued prior to the tax certificate were to sell liquor at Nos. 301 and 303. Frank Matty testified that when he went into possession his premises were more than 200 feet from St. Paul's Church, and that he afterwards added to the premises first occupied by him a 22-foot store, which brought the entrance to his place within 146 feet or 148 feet of the entrance of the church. He also testified that he began paying additional rent for his enlarged place of business June 1, 1896, and from this evidence it is inferable that prior to the date of the present tax certificate he had no license to sell liquor within 200 feet of the church and that no license had been granted to sell liquor at both numbers — 301 and 303.

I think it cannot be successfully contended, under any of these acts, that, in case a license existed authorizing a person to sell liquor just outside of the prescribed limits, he can, by renting an adjoining

building within 200 feet of a church and cutting an opening between them, become entitled to a license to sell liquors in the buildings so united, the entrance to which is, as in this case, within less than 200 feet of a church.

It is contended that July 1, 1896, Nos. 301 and 303 were occupied for a hotel, and, therefore, the tax certificate is valid. It is said that the verb "is" in the following clause, "that this prohibition shall not apply to a place which is occupied for a hotel," does not relate to the date when the act took effect, but to the date when a certificate is issued, and that the words should be interpreted to mean, "is or shall be occupied for a hotel." Under this interpretation a hotel could at any time after the law took effect be erected or opened within 200 feet of a school or church and the keeper obtain a tax certificate. Such, I think, was not the intention of the Legislature. By chapter 312 of the Laws of 1897, this subdivision was amended so it now reads: "That this prohibition shall not apply to a place which on the twenty-third day of March, eighteen hundred and ninety-six, was lawfully occupied for a hotel."

This is a legislative interpretation of the words first quoted. It was not the intention of the Legislature to authorize the sale of liquors at any place within 200 feet of a church which should thereafter be occupied as a hotel, but simply to authorize sales to be continued on premises legally occupied as a hotel or legally used for the sale of liquors March 23, 1896, when the act took effect. As before stated, it is conceded that the premises were never occupied as a hotel until July 1, 1896. The provision in respect to churches and schools is an exception to the general policy of the act, which is not a tax law, but is a law to regulate and control traffic in liquor. (*People ex rel. Einsfeld* v. *Murray*, 149 N. Y. 367.)

The courts have uniformly held that the exceptions in respect to churches and schools should be liberally construed in their favor and strictly against applicants for licenses within the prescribed distance and so as to prevent the mischief aimed at by the limitation. (*People ex rel. Cairns* v. *Murray, supra; People ex rel. Clausen* v. *Murray,* 5 App. Div. 441; *People ex rel. Gentilesco* v. *Excise Board,* 7 Misc. Rep. 415; *Matter of Zinzow,* 18 id. 653; *People ex rel. Sweeney* v. *Lammerts,* Id. 343; affd., 14 App. Div. 628.)

Again, subdivision 2 of section 31 of the Liquor Tax Law, as it

existed when this tax certificate was granted and before the amendment of 1897, defined a hotel as follows: "The term hotel as used in this act shall mean a building or place which is regularly kept open for the feeding and lodging of guests, and in which there shall be at least ten furnished bedrooms for their occupancy if situate in any city, incorporated village, or within two miles of the corporate limits of either; and at least six bedrooms if situate in any other place."

Frank Matty was sworn and described his hotel. He testified that it had ten bedrooms, two on the second floor and eight on the first floor. The two on the second floor were furnished and had windows, and they seemed to be bedrooms in the ordinary acceptation of the term. The eight bedrooms on the first floor are described as follows: Five are seven feet and three inches long and vary in width from five feet and eight inches to seven feet and two inches; two are sixteen feet and six inches long and twelve feet wide; and one is nine feet and six inches long and seven feet and three inches wide. In five of these bedrooms were single beds and mattresses complete; the other three do not appear to have been furnished. He testified that these eight bedrooms were divided by board partitions one inch thick, papered on both sides, which were only seven feet and one inch in height; that the ceiling above these bedrooms was over nine feet above the floor, and that none of these so-called bedroom partitions extends within two feet of the ceiling. Four of these bedrooms were lighted by windows and four were dark. These rooms were not bedrooms within any fair definition of the word, and only five of the eight bedrooms on the first floor were furnished as such, as required by the section last quoted. This building, at the time this liquor tax certificate was issued and at the time of the trial of this proceeding, was not a hotel within the statute, and the respondent had no right to receive or retain a tax certificate authorizing him to sell liquor in that building as a hotelkeeper.

Entertaining these views, it becomes unnecessary to consider whether in case a building within 200 feet of a church, which has been licensed to sell, on prescription or by the small measure, not to be drank on the premises, or to sell under what is known as

a saloon keeper's license, can be converted into a hotel and sales of liquors therein authorized to be drank on the premises every day in the week under a hotelkeeper's tax certificate. No intimation is made on this question.

From the views expressed, it follows that when the Liquor Tax Law took effect the sale of liquor was not legally carried on on these premises, and that the county treasurer had no authority to grant a certificate.

The judgment should be reversed and the liquor tax certificate issued to the respondent canceled, with costs in favor of the petitioner to be taxed.

HARDIN, P. J., and GREEN, J., concurred.

ADAMS, J.:

I am inclined to think that the evidence in this case was sufficient to sustain the conclusion that the transfer by Joseph Dunfee to the defendant Matty, in the month of March, 1893, of the license held by the former was of such a character as to confer upon the transferee the legal right to traffic in liquors at the place where that business was conducted.

Upon the hearing the defendant attempted to show what steps had been taken to obtain such transfer, and thereupon the petitioner's counsel stated in open court that he should not dispute the fact that the transfer was made at the time the defendant said it was. This, I think, was equivalent to stipulating that the transfer was regularly made, and as it is conceded that the defendant's license thus obtained was renewed each year, it would seem to follow that he was actually and lawfully carrying on the business of trafficking in liquors at his saloon on the 23d day of March, 1896, and had he been content to have rested his right to a tax certificate upon this fact, I fail to see why he would not have established that right within the provisions of section 24 of the Liquor Tax Law (Chap. 112, Laws of 1896, as amended by chap. 312, Laws of 1897).

It seems, however, that the defendant entertained some doubt respecting his right to maintain a saloon, the nearest entrance to which was within less than 200 feet of St. Paul's Church, and in order to obviate this difficulty and remove the doubt he attempted, before applying for his tax certificate, to convert his saloon into a

hotel. Upon the hearing before the learned trial justice evidence was given which was designed to show that he had successfully accomplished this metamorphosis, and it was found that the defendant's place was a legal hotel; that it complied with all the requirements of the law as such, and that the defendant was entitled to conduct his " hotel pursuant to the license obtained by him under chapter 112 of the Laws of 1896."

This finding is, in my opinion, wholly unwarranted by the undisputed facts of the case; upon the contrary, it is impossible for me to read the evidence contained in the record without reaching the conclusion that the defendant's attempt to convert his saloon into a hotel was a mere subterfuge and afterthought, and that if the defendant were permitted by the courts to succeed in this attempt, it would encourage other liquor dealers, similarly situated, to adopt the same course, and consequently lead to innumerable evasions of the law, which would ultimately result in depriving it of all force and efficacy.

I am of the opinion, therefore, that the learned trial justice was in error in reaching the conclusion he did, and if so it follows that the defendant made a false statement in his application for a tax certificate. The order appealed from should consequently be reversed and his certificate canceled.

HARDIN, P. J., and WARD, J., concurred.

Determination reversed and tax certificate canceled, with costs.