as when submitted to the applicant. This, I think, should not have been overlooked by the company. They had no right to assume anything from that beyond the fact that the applicant declined to state what the amount of the incumbrances actually was; that he entirely ignored any effort on the part of the company to have him state as to incumbrances. This eliminates from the case the grounds of appellant's contention, for there could be no warranty unless the applicant made the statement, and no breach unless the statement were false.

The further claim of appellant that the policy was void because of fraudulent concealment of the material fact that there were incumbrances, I think untenable, for the reason that there was no fraudulent concealment. The failure to answer the question implied in the paragraph referred to, or answering it to a certain point, and not completing his answer, was notice to the company simply that he declined to divulge; and the company might or might not issue to him a policy, as it pleased, on such facts as the company had. It was not concealment of which the company was not advised before the policy was issued, and therefore not fraudulent.

I think the judgment should be affirmed, with costs. All concur.

---

(47 App. Div. 111.)

## In re McCUSKER.

(Supreme Court, Appellate Division, Third Department. January 8, 1900.)

1. LIQUOR TAX LAW—CHURCH—CHARACTER OF BUILDING.
　　A Jewish synagogue, the upper floor of which is used exclusively for religious services, and the lower floor for the Sunday school of the congregation and as the meeting place of three lodges of a fraternal and benevolent character, the membership of which is limited to Jews by birth, but not to members of the congregation of the synagogue, and each of which pays rent to the synagogue, is a "building exclusively occupied as a church," within the meaning of the liquor tax law (Laws 1896, c. 112, § 24, subd. 2), prohibiting the maintenance of a saloon within a certain distance thereof.

2. SAME—SECOND APPLICATION FOR CANCELLATION OF CERTIFICATE.
　　An order denying an application for the cancellation of a liquor tax certificate on the ground that the building in which the business was carried on was within 200 feet of a certain church, is not a bar to the cancellation of another certificate on that ground, issued for the same place to a different person.
　　Parker, P. J., dissenting.

Appeal from special term, Rensselaer county.

Application for the cancellation of a liquor tax certificate issued to Bernard E. McCusker. From an order canceling the certificate, defendant appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, KELLOGG, and MERWIN, JJ.

James E. Cooley, for appellant.
P. C. Dugan, for respondent.

LANDON, J. The appellant's building, in which he was authorized, by the liquor tax certificate revoked and canceled by the order

appealed from, to traffic in liquors, and in which he carried on such traffic, is situate on the west side of Third street, in the city of Troy, and is separated by less than three feet from the Berith Sholom Temple, a Jewish synagogue, situate on the same street, and the distance from the center of the nearest entrance of the one to the center of the nearest entrance to the other is less than 200 feet. At the date of the passage of the liquor tax law, March 23, 1896, the building in which the appellant traffics in liquors was not lawfully occupied for a hotel, nor was it a place in which such traffic in liquors was lawfully carried on at that date, and in the latter particular the appellant's application for the certificate was not true. The certificate was granted to him in violation of subdivision 2 of section 24 of the liquor tax law (chapter 112, Laws 1896) if the synagogue was "a building exclusively occupied as a church." The special term found that it was so used, and we are asked to review this finding of fact. The church building has been occupied as a church for 30 years. It consists of two floors or stories; the upper story being used exclusively for the religious services of the church, and the lower story for the Sunday school of the church, and also as the meeting place of three lodges, namely, the Free Sons of Israel, the Kesher Shel Barshel and the Independent Order of Benai Berith. These are benevolent societies of a fraternal character, having some features of insurance or pecuniary aid in case of need, with educational and moral helps or incidents. The membership is exclusively limited to those who are Jews by birth, but not necessarily members of this church or congregation. They usually hold weekly meetings, each at a separate time from the other, and each pays the church some rent, which is devoted to its support. When the church was built, this lower story was fitted for the accommodation of such societies, and with the view of deriving some revenue from them. While not dependent upon the church, or subject to it, they are helpful to it, and their existence, methods, and usefulness are in harmony with its faith and teachings, and they enjoy its favor. The tie which binds these collateral societies to the church itself seems to be partly a community of religious faith, and partly of mutual helpfulness in temporalities. The rule of construction adopted by the courts in such cases favors the churches, and not the traffickers in liquor. In re Place, 27 App. Div. 561, 50 N. Y. Supp. 640, and cases cited at page 568, 27 App. Div., and page 645, 50 N. Y. Supp. We think it would be a harsh and unwarranted construction which would deprive this church of the protection of the statute simply because the scheme of its usefulness is broad enough to embrace such societies, composed of persons born within its faith, although all of them do not actually worship within its temple. It is no doubt open to them when they wish to do so.

A proceeding similar to this was instituted by one Holden to revoke and cancel the liquor tax certificate issued to the appellant in 1898 upon the ground that the building in which he trafficked in liquors was within 200 feet of the church. The application was denied. In re McCusker, 23 Misc. Rep. 446, 51 N. Y. Supp. 281. The order in that case is no bar to this. The certificate is not the same. The ap-

plicant is not the same. The facts stipulated in that case took the appellant's place of business out of the prohibition of the statute. Such a stipulation is not here made. Any citizen of the state may make the application. Liquor Tax Law, § 28. If a proceeding by one petitioner upon a stipulated state of facts could bar every other petitioner from proceeding upon a proved state of facts, the temptation to an early and collusive proceeding would be great. We do not think the earlier proceeding was collusive, but the rule invoked, if sanctioned, would invite collusion.

The order is affirmed, with costs. All concur, except PARKER, P. J., who dissents.

## MARCY v. REIMER et al.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

EASEMENTS—WATER—ADJACENT LANDOWNERS.

A common grantor owned two tracts of land, and on one of the tracts a spring was located, the water from which was conducted by underground pipes, and discharged in a receptacle on the other tract. She conveyed the tract on which the spring was located to defendant, and thereafter conveyed the other tract to plaintiff, and neither deed contained any mention of the spring or water. *Held*, that, since at the time of the second conveyance plaintiff owned no property rights in the spring, the grantee of the second tract acquired no easement therein, or in the flow of the water to the receptacle, as appurtenant to his land.

Appeal from special term, Dutchess county.

Action by Marcus D. Marcy against Adolph Reimer and another for damages for cutting a pipe which carried water to plaintiff's premises from a spring on defendants' adjoining land. The parties held under a common grantor, by deeds executed on the same day, but defendants had previously been in possession under a contract of sale. From a judgment for defendants, plaintiff appeals. Affirmed.

The following is the opinion of the trial court:.

The deeds by which the parties obtained title to their respective lands were both delivered on the same day. Whose deed was delivered first? The parties and their witnesses differ on this point. A Mrs. White owned a tract of land. She agreed to sell a part of the tract to Reimer in January, 1894; deed to be delivered March 31, 1894, with possession delivered immediately. There was a spring on the piece Reimer bought, from which water was conveyed by underground pipes, which discharged in a tub above the surface of the ground on the part of the White land which she retained. No reservation of the right to have the water flow to the tub was contained in the agreement, and Reimer knew nothing of the source of the water flow which discharged in the tub. On the 20th of March, 1894, one Feroe agreed with Mrs. White to buy the part of the tract not sold to Reimer, and to pay $500 on the 31st of March, 1894, and take a deed securing the remainder by mortgage on the property. On the 31st March, 1894, Mrs. White attended, with her deeds,—one to Reimer and the other to Feroe. It then, for the first time, was proposed by Feroe that the plaintiff, who was his son-in-law, should take the deed, and he would secure the payment of the part of purchase money unpaid by an additional security on his (Feroe's) other lands. This made a change in the deed necessary, and also a new mortgage. This mortgage was drawn by a justice of the peace. Feroe is dead; but the agent of the owner, Mrs. White, and others give evidence tending to show that the Feroe deed was delivered about half past one or two o'clock p. m., and before the Reimer deed. The defend-